courtdocs@dickinsonwright.com
Carolyn J. Johnsen (#011894)
cjjohnsen@dickinsonwright.com
M. Kimberly Stagg (TN #16820)
(pro hac vice application pending)
kstagg@dickinsonwright.com
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Ste. 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100
*Proposed Attorneys for the Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>THE ROOMSTORES OF PHOENIX, L.L.C, d/b/a THE ROOMSTORE,<br><br>Debtor. | Chapter 11 Proceeding<br><br>No. 2:15-bk-15898-DPC<br><br>**EMERGENCY MOTION FOR ORDER AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO HONOR PREPETITION COMMITMENTS UNDER CUSTOMER PROGRAMS**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

The RoomStores of Phoenix, L.L.C., d/b/a The RoomStore, debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), by and through its undersigned counsel, hereby files the *Motion Authorizing, But Not Directing, Debtor to Honor Prepetition Commitments Under Customer Programs* (the "**Motion**"). The Debtor supports the Motion with the contemporaneously filed *Declaration of Alan Levitz in Support of First Day Motions* (the "**Levitz Declaration**"), the following Memorandum of Points and Authorities, and all matters of record.

-1-

## MEMORANDUM OF POINTS AND AUTHORITIES

## JURISDICTION AND VENUE

1. On December 18, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2. Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor continues to operate its business and manage its assets as debtor in possession.

3. This Court has jurisdiction over these Chapter 11 proceedings under 28 U.S.C. §§ 157 and 1334.

4. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2).

5. The Debtor is an Arizona limited liability company with its principal place of business in Phoenix, Maricopa County, Arizona.

6. Venue of Debtor's Chapter 11 proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

7. The relief requested by this Motion may be granted in accordance with the provisions of 11 U.S.C. §§ 105(a), 507, and 363, and Fed. R. Bankr. P. 9006(c) and 9007, and Local R. Bankr. P. 9013-1(h).

## FACTUAL BACKGROUND

**A.     Overview.**

8. The Debtor is a furniture retailer providing premier furniture and accessories for a low price. It currently operates 11 leased showroom locations, each known as the "RoomStore," including 9 located in the Phoenix, Arizona metropolitan area, one in Casa

Grande, Arizona, and one in Prescott, Arizona (also referred to as the "**Locations**"). One location, on Alma School Road, consists of two storefronts including a Clearance Center and a full line store. The Debtor also leases a warehouse from which it fills furniture orders and deliveries.

9. The Debtor is an Arizona Limited Liability Company and was formed in 1993. Its members consist of Alan Levitz (33.5%), Phil Levitz (33.5%) and Dan Selznick (33.0%). Alan Levitz currently serves as the managing member and oversees all operations of the business. Upper management includes Mark Hendricks as the controller, Margaret Raborn as Merchandise Manager, Jeff Conti as Warehouse Operations Manager, Mike Norris as Sales Director, and a store manager for each of the Locations. The Company has approximately 350 employees.

**B.     Assets and Liabilities.**

10. Debtor's assets consist principally of furniture and accessories inventory believed to have a value of approximately $8 million; accounts receivable in the approximate amount of $250,000; Company furniture, fixtures and equipment believed to have an approximate value of $325,000; and the rights pursuant to a Consulting Agreement described below.

11. Debtor's secured debt consists of the following: a) Broyhill Furniture Industries Inc. and Heritage Home Group LLC, f/k/a Furniture Brands International, Inc.,[1] in the approximate amount of $170,000; and b) Sealy, Inc. in the approximate amount of $1,340,000; each allegedly secured by a purchase money security interest in

---

[1] On information and belief, Heritage Home Group LLC is believed to be the successor to Broyhill and the owner of the Broyhill and Lane Furniture brands.

certain furniture inventory and the proceeds resulting therefrom. Debtor also may have secured debt in connection with 8 leased vehicles, for which payments were current through December 10, 2015. Finally, Synchrony Bank, which provided financing to Debtor's customers prepetition,[2] has asserted a lien in certain accounts established in connection with its financing program and any unpaid returned goods that were financed. Any amount that may be owed to Synchrony is believed to be immaterial, and Synchrony holds a letter of credit secured by a collateral account in which $100,000 is on deposit with the Bank of Arizona.

12. The Debtor is current on all taxes and is in arrears for one month's rent for its leases of the Locations and warehouse. Unsecured debt is approximately $9,000,000.

**C.  History of the Debtor and Circumstances Leading to Bankruptcy.**

13. The Company began in 1993 with two stores and over the years expanded to multiple locations in the Phoenix Metropolitan Area and further expanded to Prescott, Arizona and Casa Grande, Arizona. Prior to the severe economic downturn in 2008, the Company had as much as $125 million in annual gross sale revenues. The housing market crash that began in 2008 severely affected the retail furniture industry, and along with all retailers, the Company suffered dramatic declines. However, even when the market began to improve, competition among furniture retailers in the same genre increased significantly and the Company could no longer generate the revenues it had accomplished in the past. Because of the increased competition, margins were reduced substantially.

---

[2] The Debtor has discontinued assisting customers with the opening of new accounts through Synchrony.

-4-
Case 2:15-bk-15898-DPC    Doc 7    Filed 12/18/15    Entered 12/18/15 18:14:20    Desc
Main Document    Page 4 of 16

14. Gross sales revenues were approximately $76,200,000 in 2013, about $70,700,000 in 2014, and are expected to total about $63,000,000 for 2015. The Company had net income of about $765,000 in 2013, but suffered a loss of about $476,000 in 2014, and expects the loss in 2015 will quadruple because of the rapid margin decline.

15. Recognizing the immediate need to stem the losses, maintain cash flow and find a solution that would protect vendors and other creditors, Mr. Levitz began, in the third quarter of 2015, to entertain the possibility of hiring a company to assist with a promotional or liquidation sale. Several companies in the furniture sale/liquidation business contacted him but none of the proposals were acceptable. In or about November 2015, Mr. Levitz received a recommendation regarding a promotional sales joint venture group led by International Retail Group, and including Watch Hill Furniture and SB Capital Group (referred to as the "**Consultant**"). Mr. Levitz began discussions regarding a plan in which the Consultant would provide management expertise and funding in order to provide the Company with advances to pay certain operating costs and then Consultant would conduct a sale of the Debtor's inventory. Such an agreement contemplated a Chapter 11 bankruptcy filing in order to facilitate the process and provide a respite from certain aggressive creditors.

16. During the negotiations, Mr. Levitz contacted several companies to ascertain whether there were any better alternatives. None of the companies could match the proposal proffered by the Consultant. In fact, one of the companies confirmed that the Consultant's proposal seemed generous and should be lucrative for the RoomStore.

Further, it became clear that the Consultant would be able to start immediately, and thus capture January sales which are traditionally the highest of the year.

17. On December 11, 2015, the Company executed a Sale Promotion Consulting Agreement (the "**Agreement**") that provides, among other things, for the Consultant to make pre-petition "**Advances**"[3] to the Debtor to pay critical operating expenses and secured debt; for the payment of "**Sale Expenses**" including rent and certain payroll expenses to be paid from the proceeds of the inventory sales; for payment by the Consultant to the Debtor of a "**Guaranteed Amount**" based on a valuation of the Debtor's inventory; and for payment by the Consultant to the Debtor of a "**Sales Override**" based on the proceeds from the inventory sales. In exchange for the forgoing and the Consultant providing the necessary assistance to conduct a major sale event in order to maximize the recovery for the estate from the inventory sales, the Consultant receives as compensation a portion of the proceeds generated.

18. As contemplated, the Debtor filed a voluntary Chapter 11 proceeding on December 18, 2015.

**D.** **Debtor's Prepetition Customer Programs**

19. Before the Petition Date, in the ordinary course of its business, the Debtor engaged in certain practices to develop and sustain positive reputations in the marketplace for its products and services, including without limitation (a) allowing and honoring customer deposits ("**Customer Deposits**"); (b) arranging for customers to finance their purchases through third parties ("**Customer Financing**"), including Synchrony Bank,

---

[3] Capitalized terms not defined in this Motion will have the meaning set forth in the Agreement.

Genesis, Snap, RentACenter/AcceptanceNow, Progressive, and FlexPay ("**Consumer Lenders**"); (c) selling and honoring gift certificates ("**Gift Cards**"); and (d) providing certain in-store credits and a return and refund policy ("**Return Policy**", with Customer Deposits, Customer Financing, and Gift Cards, collectively "**Customer Programs**"). The common goals among the Customer Programs have been to develop customer loyalty, encourage repeat business, and ensure customer satisfaction, thereby retaining current customers, attracting new ones, and, ultimately, increasing revenue. The Debtor's ability to honor its Customer Programs are important to the Debtor's upcoming sales events.

Customer Deposits

20. In the ordinary course of the Debtor's business, prior to the Petition Date, the Debtor received Customer Deposits for orders to be filled through special order or for which inventory was not available at the time of the customer's purchase ("**Pre-Sale Orders**"). Typically, customers place deposits representing 50% of the final purchase price. Although the Debtor ceased accepting Pre-Sale Orders on or about December 16, 2015, certain Pre-Sale Orders have not yet been delivered and each Customer Deposit is being held by the Debtor until the Pre-Sale Order can be fulfilled and the remainder of the purchase price collected by the Debtor. As of the Petition Date, the Debtor holds approximately $1,800,000 in Customer Deposits related to approximately 3700 customers' Pre-Sale Orders.

21. As further explained in the Motion to Approve Assumption of Consultant Agreement, filed contemporaneously with this Motion, the services to be provided by Consultant will include assisting the Debtor in satisfying the Pre-Sale Orders. The Debtor's ability to honor Pre-Sale Orders will permit the Debtor to fulfill pending orders and realize the difference due under the pending orders.

22. The Debtor seeks authority to honor its Pre-Sale Order obligations, including honoring such Customer Deposits in the ordinary course of business. For a Pre-Sale Order that will be fulfilled, the Debtor will apply the Customer Deposit towards payment of the Pre-Sale Order at the time of delivery of the products to the customer and the customer's payment of any remaining amounts due, all in accordance with the Debtor's Pre-Sale Order policies. The Debtor also seeks authority to refund Customer Deposits in cases where, for whatever reason, the Pre-Sale Order cannot be fulfilled consistent with the Debtor's existing practices.

## Customer Financing

23. Prior to the Petition Date, the Debtor offered its customers the ability to finance purchases through Consumer Lenders. The Debtor's customers could apply for credit from Consumer Lenders in the Debtor's store locations in order to purchase products on credit based upon terms set by the Consumer Lenders. When a customer purchased an item from the Debtor using Customer Financing, the Debtor would be paid in full from the Consumer Lender at the time of delivery and the customer would be liable to the Consumer Lender for the purchase price of the item.

24. The Debtor discontinued all Customer Financing for any sales after the Petition Date. However, certain purchases (including Pre-Sale Orders) were made with Customer Financing prepetition, the revenues for which the Debtor will collect upon completion of the order. The Debtor seeks authorization to complete those orders under the Customer Financing program so that payment can be received by the Debtor.

## Gift Cards

25. Prior to the Petition Date, the Debtor sold Gift Cards for use in the Debtor's stores. Gift Cards were available for purchase at the Debtor's stores and some have not yet been redeemed. The Debtor has stopped selling Gift Cards as of the Petition Date. However, not all outstanding Gift Cards have been redeemed. As of the Petition Date, the obligations on account of Gift Cards total approximately $18,000. Customers may only

-8-
Case 2:15-bk-15898-DPC    Doc 7    Filed 12/18/15    Entered 12/18/15 18:14:20    Desc
Main Document    Page 8 of 16

redeem Gift Cards for goods or services, not a cash refund. Moreover, when customers redeem Gift Cards, they often purchase goods or services in excess of the amount of the Gift Card. The Debtor seeks authority to honor its obligations on account of Gift Cards in the ordinary course of business by applying them towards payment for merchandise in accordance with the Debtor's policies.

<u>Returns, Refunds and In-Store Credits</u>

26. Prior to the Petition Date, the Debtor's Return Policy provided that within five days of delivery, a customer could return the products (excluding special orders, pillows, mattress covers and other miscellaneous items) for a refund of the purchase price (excluding delivery fees, fabric protection, leather protection, and extended warranty costs). The Debtor is not continuing its Return Policy after the Petition Date; although exchanges have been and may continue to be available generally when there is a manufacturer's warranty or when there is damage to the products.

27. In connection with sales prior to the Petition Date, certain customers may hold contingent claims against the Debtor under the Return Policy relating to products sold in the ordinary course of business prior to the Petition Date. It is difficult to estimate with precision the aggregate amount of those potential claims for products purchased prior to the Petition Date, but the amount should not be material.

28. Absent authority from the Court, the Debtor will be unable to honor or perform some or all of the prepetition obligations that arose in connection with the Customer Programs prior to commencement of this Chapter 11 case. Any delay in honoring the Customer Programs will severely and irreparably impair the Debtor's customer relations at a time when customer patronage is extremely critical.

29. Any exposure to customer frustrations that may arise if Customer Programs cannot be honored would distract the Debtor from undertaking and completing the sales events planned to maximize the recover for the estate. As well, such customer frustrations would damage the Debtor's customer relations, thereby causing a corresponding material

reduction in sales and revenues. Accordingly, the Debtor seeks authority to honor the prepetition obligations that arose in connection with the Customer Programs in order to maintain its customer goodwill during the pendency of this Chapter 11 case.

## RELIEF REQUESTED

30. By this Motion, the Debtor seeks the entry of an order, authorizing, but not directing, the Debtor to honor its prepetition commitments under the Customer Programs.

## LEGAL ARGUMENT

31. Certain obligations related to Customer Programs arguably constitute prepetition priority liabilities under Bankruptcy Code § 507(a)(7) and give rise to individual priority claims that must be paid in full. In addition, Bankruptcy Code § 363 authorizes the Debtor to pay prepetition claims if supported by a business justifications. Moreover, Bankruptcy Code § 105(a) permits the Court to use its broad equitable powers to authorize the Debtor's payment of a prepetition debt.

32. Section 507(a)(7) of the Bankruptcy Code provides seventh-level priority treatment for

> allowed unsecured claims of individuals, to the extent of $2,775 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

11 U.S.C. § 507(a)(7). The Debtor does not believe any material number of individual customers have a claim associated with the Customer Programs in excess of $2,775.

33. The claims associated with the Customer Programs are either specifically mentioned in Bankruptcy Code § 507(a)(7), or are similar to deposits and may therefore be treated in the same fashion. "The ostensible purpose of the seventh priority is to protect consumers who make deposits for goods or services . . . that were not provided to

-10-

Case 2:15-bk-15898-DPC   Doc 7   Filed 12/18/15   Entered 12/18/15 18:14:20   Desc
Main Document    Page 10 of 16

the consumers at the time the debtor filed for bankruptcy." 2 Collier on Bankruptcy, § 507.09 (16th ed. Rev. 2010); see also In re Tart's T.V., Furniture & Appliance Co. Inc., 165 B.R. 171, 173 (Bankr. E.D.N.C. 1994) (holders of extended warranty claims are entitled to priority under section 507(a)(7)).

34. The Court may also grant the relief requested herein pursuant to Section 363 of the Bankruptcy Code. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under Section 363, a court may authorize a debtor to pay certain prepetition claims. See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wage claims pursuant to Bankruptcy Code § 363(b)). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." Id. at 175.

35. Paying prepetition commitments under the Customer Programs will benefit the Debtor and its creditors by allowing the Debtor's operations to continue without interruption and allowing the Debtor to maximize its ability to sell its inventory. In essence, the Debtor hopes to continue during the postpetition period to honor its Customer Programs that it believes will help avoid customer frustrations and promote increased revenues postpetition. The importance of the Debtor's focus on its post-petition sales events, as well as the importance of the Debtor's customers to its business, cannot be underestimated. The Debtor's Customer Programs have generated valuable goodwill and repeat business and have contributed to the Debtor's overall revenue. If the Debtor does not honor its obligations under the Customer Programs, the Debtor risks liability on claims brought on behalf of disgruntled customers and also risks alienating its customers and encouraging customers to procure products from the Debtor's competition, all to the detriment of the Debtor, its business and its reorganization. The substantial benefit

-11-
Case 2:15-bk-15898-DPC    Doc 7    Filed 12/18/15    Entered 12/18/15 18:14:20    Desc
                    Main Document    Page 11 of 16

conferred on the Debtor by honoring the Customer Programs justifies the granting of the relief requested in this Motion.

36. The Court may also rely on its general equitable powers to grant the relief requested in this motion as codified in Bankruptcy Code § 105(a). Section 105 empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to authorize the payment of prepetition debt when such payment is needed to benefit the debtor's estate is not a new concept. See Ionosphere Clubs, 98 B.R. at 175-176 (citing Miltenberger v. Logansport, C. & S.W. R. Co., 106 U.S. 286 (1882)). Section 105(a) authorizes a court to permit payment of prepetition obligations when essential to the continued operation of the debtor. See In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992).

37. Application of Bankruptcy Code § 105(a) in the context of this Motion is appropriate because the relief requested herein is consistent with the policy of Chapter 11 of the Bankruptcy Code. A debtor in possession is a fiduciary with a duty to protect and preserve the estates, including the value of the business as a going concern. In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this [fiduciary] duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). Granting the relief requested in this Motion will enhance the likelihood of maximizing the value of the estate's assets and thus benefit the estate's creditors.

38. The Debtor's creditors and other constituents will also benefit from the relief sought herein because it is expressly calculated to maximize the value of the Debtor's estate. Moreover, the Debtor's decision to honor the Customer Programs will not result in significant payments from the Debtor's estates because the majority of these programs result in the Debtor providing customers with additional goods and services, which increase revenues to the Debtor. Thus, the Customer Programs will not harm the

-12-

Case 2:15-bk-15898-DPC    Doc 7    Filed 12/18/15    Entered 12/18/15 18:14:20    Desc
Main Document    Page 12 of 16

Debtor's creditors and instead will protect the Debtor's goodwill and help maintain the value of its estate during this critical time.

39. When retaining loyalty and patronage of customers is critical to a Chapter 11 case, courts in districts across the country have granted relief similar to that requested here. See, e.g., In re Bakers Footwear Group, Inc., Case No. 12-49658 (Bankr. E.D. Mo. 2012); In re Sofa Express, Inc., Case No. 07-9024 (Bankr. M.D. Tenn. 2007); In re Oskar Huber Fine Furniture, Inc., Case No. 08-28138 (Bankr. D. N.J. 2008). Accordingly, the Debtor requests the authority to honor prepetition commitments under the Customer Programs.

40. Nothing contained in this Motion is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim or an approval or assumption of any agreement, contract or lease under Bankruptcy Code § 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's right to subsequently dispute such claim.

## **NOTICE**

41. No trustee, examiner, or official committee has been appointed in this case.

42. Notice of this Motion has been given to the Office of the United States Trustee, counsel for the Consultant, the Debtor's secured creditors, the Debtor's landlords, and the Debtor's twenty (20) largest unsecured creditors. Based on the nature of the relief requested in this Motion, the Debtor submits that no other notice need be given.

WHEREFORE, the Debtor requests that the Court enter the proposed Order, attached hereto as **Exhibit A**:

A. Authorizing but not directing the Debtor to honor certain prepetition commitments under its Customer Programs;

B. Granting such other and further relief as is just and proper under the facts and circumstances.

DATED this 18th day of December 2015.

**DICKINSON WRIGHT PLLC**.

By: /s/ Carolyn J. Johnsen
Carolyn J. Johnsen
M. Kimberly Stagg
*Proposed Attorneys for the Debtors*

**FOREGOING** electronically filed with the Clerk of the U.S. Bankruptcy Court for the District of Arizona this 18th day of December 2015, with a COPY served this same date via e-mail on the following party:

U.S. TRUSTEE'S OFFICE
230 N. First Avenue, Suite 204
Phoenix, AZ 85003
ustpregion14.px.ecf@usdoj.gov
Elizabeth.c.amorosi@usdoj.gov
*Attorneys for the United States Trustee*

Robert A. Boghosian, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Avenue, Suite 2400
New York, NY 10170
rboghosian@ctswlaw.com
*Attorneys for Consultant*

And via email, facsimile or overnight mail on the following parties:

Landlords of Debtor.
Secured Creditors of Debtor.
20 Largest Unsecured Creditors of Debtor.

/s/ Lauri Andrisani
NASHVILLE 53406-11 552848v4

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>THE ROOMSTORES OF PHOENIX, L.L.C., d/b/a THE ROOMSTORE,<br><br>Debtor. | Chapter 11 Proceeding<br><br>No. 2:15-bk-15898-DPC<br><br>**ORDER AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO HONOR PREPETITION COMMITMENTS UNDER CUSTOMER PROGRAMS** |

This matter comes before the Court pursuant to the *Emergency Motion for Order Authorizing, But Not Directing, Debtor to Honor Prepetition Commitments Under Customer Programs* (the "**Motion**") filed by The RoomStores of Phoenix, L.L.C., d/b/a The RoomStore, debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"). The Court having considered the Motion on December ____, 2015, finds and concludes that the Court has jurisdiction to consider the matter; that the relief requested by the Debtor is appropriate and in the best business judgment and interest of the Debtor, its estates, and creditors; that due and proper notice of the Motion has been given; and sufficient cause appears to grant the relief requested in the Motion. Based on the arguments of counsel at the hearing on the Motion, and on the foregoing, and good cause appearing therefor,

IT IS HEREBY ORDERED:

A. The Motion is GRANTED; and

B. The Debtor is authorized, but not directed, to honor any prepetition commitments under its Customer Programs, as set forth in the Motion.

**SIGNED AND DATED ABOVE.**

NASHVILLE 53406-11 553422v1