**Carolyn J. Johnsen (#011894)**
cjjohnsen@dickinsonwright.com
**M. Kimberly Stagg (TN #16820)**
**(pro hac vice application pending)**
kstagg@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
**1850 N. Central Ave., Ste. 1400**
**Phoenix, Arizona 85004**
**Phone: (602) 285-5000**
**Fax: (602) 285-5100**
*Proposed Attorneys for the Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>THE ROOMSTORES OF PHOENIX, L.L.C., d/b/a THE ROOMSTORE,<br><br>Debtor. | Chapter 11 Proceeding<br><br>No. 2:15-bk-15898-DPC<br><br>**EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION WAGES AND SALARIES AND TO HONOR AND CONTINUE PRE-PETITION EMPLOYEE BENEFITS**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

The RoomStores of Phoenix, L.L.C., d/b/a The RoomStore, debtor and debtor-in-possession in the above-captioned case (the "**Debtor**" or "**Company"**), by and through its undersigned counsel, hereby files the *Emergency Motion for Order Authorizing Debtor to Pay Pre-Petition Wages and Salaries and to Honor and Continue Pre-Petition Employee Benefits* (the "**Motion**"). The Debtor supports the Motion with the contemporaneously filed *Declaration of Alan Levitz in Support of First Day Motions* (the "**Levitz Declaration**"), the following Memorandum of Points and Authorities, and all matters of record.

## MEMORANDUM OF POINTS AND AUTHORITIES

## JURISDICTION AND VENUE.

1.     On December 18, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2.     Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor continues to operate its business and manage its assets as debtor in possession.

3.     This Court has jurisdiction over these Chapter 11 proceedings under 28 U.S.C. §§ 157 and 1334.

4.     These matters constitute core proceedings under 28 U.S.C. § 157(b)(2).

5.     The Debtor is an Arizona limited liability company with its principal place of business in Phoenix, Maricopa County, Arizona.

6.     Venue of Debtor's Chapter 11 proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

7.     The relief requested by this Motion may be granted in accordance with the provisions of 11 U.S.C. §§ 105(a) and 507, FED. R. BANKR. P. 9006(c) and 9007, and LOCAL R. BANKR. P. 9013-1(h).

## FACTUAL BACKGROUND

### A.     Overview.

8.     The Debtor is a furniture retailer providing premier furniture and accessories for a low price.  It currently operates 11 leased showroom locations, each known as the "RoomStore," including 9 located in the Phoenix, Arizona metropolitan area, one in Casa Grande, Arizona, and one in Prescott, Arizona (also

referred to as the "**Locations**"). One location, on Alma School Road, consists of two storefronts including a Clearance Center and a full line store. The Debtor also leases a warehouse from which it fills furniture orders and deliveries.

9.     The Debtor is an Arizona Limited Liability Company and was formed in 1993. Its members consist of Alan Levitz (33.5%), Phil Levitz (33.5%) and Dan Selznick (33.0%).    Alan Levitz currently serves as the managing member and oversees all operations of the business. Upper management includes Mark Hendricks as the controller, Margaret Raborn as Merchandise Manager, Jeff Conti as Warehouse Operations Manager, Mike Norris as Sales Director, and a store manager for each of the Locations.    The Company has approximately 350 employees.

**B.     Assets and Liabilities.**

10.     Debtor's assets consist principally of furniture and accessories inventory believed to have a value of approximately $8 million; accounts receivable in the approximate amount of $250,000; Company furniture, fixtures and equipment believed to have an approximate value of $325,000; and the rights pursuant to a Consulting Agreement described below.

11.     Debtor's secured debt consists of the following: a) Broyhill Furniture Industries Inc. and Heritage Home Group LLC, f/k/a Furniture Brands International, Inc.,[1] in the approximate amount of $170,000; and b) Sealy, Inc. in the approximate amount of $1,340,000; each allegedly secured by a purchase money security interest

---

[1] On information and belief, Heritage Home Group LLC is believed to be the successor to Broyhill and the owner of the Broyhill and Lane Furniture brands.

in certain furniture inventory and the proceeds resulting therefrom. Debtor also may have secured debt in connection with 8 leased vehicles, for which payments were current through December 10, 2015. Finally, Synchrony Bank, which provided financing to Debtor's customers prepetition,[2] has asserted a lien in certain accounts established in connection with its financing program and any unpaid returned goods that were financed. Any amount that may be owed to Synchrony is believed to be immaterial, and Synchrony holds a letter of credit secured by a collateral account in which $100,000 is on deposit with the Bank of Arizona.

12.     The Debtor is current on all taxes and is in arrears for one month's rent for its leases of the Locations and warehouse. Unsecured debt is approximately $9,000,000.

**C.      History of the Debtor and Circumstances Leading to Bankruptcy.**

13.     The Company began in 1993 with two stores and over the years expanded to multiple locations in the Phoenix Metropolitan Area and further expanded to Prescott, Arizona and Casa Grande, Arizona. Prior to the severe economic downturn in 2008, the Company had as much as $125 million in annual gross sale revenues. The housing market crash that began in 2008 severely affected the retail furniture industry, and along with all retailers, the Company suffered dramatic declines. However, even when the market began to improve, competition among furniture retailers in the same genre increased significantly and the Company

---

[2] The Debtor has discontinued assisting customers with the opening of new accounts through Synchrony.

could no longer generate the revenues it had accomplished in the past.  Because of the increased competition, margins were reduced substantially.

14.    Gross sales revenues were approximately $76,200,000 in 2013, about $70,700,000 in 2014, and are expected to total about $63,000,000 for 2015.  The Company had net income of about $765,000 in 2013, but suffered a loss of about $476,000 in 2014, and expects the loss in 2015 will quadruple because of the rapid margin decline.

15.    Recognizing the immediate need to stem the losses, maintain cash flow and find a solution that would protect vendors and other creditors, Mr. Levitz began, in the third quarter of 2015, to entertain the possibility of hiring a company to assist with a promotional or liquidation sale. Several companies in the furniture sale/liquidation business contacted him but none of the proposals were acceptable. In or about November 2015, Mr. Levitz received a recommendation regarding a promotional sales joint venture group led by International Retail Group, and including Watch Hill Furniture and SB Capital Group (referred to as the "**Consultant**").    Mr. Levitz began discussions regarding a plan in which the Consultant would provide management expertise and funding in order to provide the Company with advances to pay certain operating costs and then Consultant would conduct a sale of the Debtor's inventory. Such an agreement contemplated a Chapter 11 bankruptcy filing in order to facilitate the process and provide a respite from certain aggressive creditors.

16.    During the negotiations, Mr. Levitz contacted several companies to ascertain whether there were any better alternatives.  None of the companies could

match the proposal proffered by the Consultant. In fact, one of the companies confirmed that the Consultant's proposal seemed generous and should be lucrative for the RoomStore. Further, it became clear that the Consultant would be able to start immediately, and thus capture January sales which are traditionally the highest of the year.

17. On December 11, 2015, the Company executed a Sale Promotion Consulting Agreement (the "**Agreement**") that provides, among other things, for the Consultant to make pre-petition "**Advances**"[3] to the Debtor to pay critical operating expenses and secured debt; for the payment of "**Sale Expenses**" including rent and certain payroll expenses to be paid from the proceeds of the inventory sales; for payment by the Consultant to the Debtor of a "**Guaranteed Amount**" based on a valuation of the Debtor's inventory; and for payment by the Consultant to the Debtor of a "**Sales Override**" based on the proceeds from the inventory sales. In exchange for the forgoing and the Consultant providing the necessary assistance to conduct a major sale event in order to maximize the recovery for the estate from the inventory sales, the Consultant receives as compensation a portion of the proceeds generated.

18. As contemplated, the Debtor filed a voluntary Chapter 11 proceeding on December 18, 2015.

**RELIEF REQUESTED**

19. The Debtor requests an Order pursuant to Bankruptcy Code §§ 105(a)

---

[3] Capitalized terms not defined in this Motion will have the meaning set forth in the Agreement.

and 507(a)(4) authorizing, but not directing, it to pay pre-petition wages and salaries of its active employees and all related local, state, and federal withholding taxes, Social Security taxes and Medicare taxes, and any withholdings for garnishments, employee-paid premiums, and similar items.

20.     In addition, Debtor seeks an Order authorizing, but not directing, the Debtor to honor, continue, and pay costs associated with its employee benefits programs, principally the employee medical plan, expense reimbursement policies (which cover such typical items such as mileage reimbursements), and vacation/pto program.

21.     For the reasons set forth below, Debtor submits that it is in the best interest of the estate for this Court to authorize the requested payments.

### LEGAL ARGUMENT

22.     The Debtor's current payroll is due to be paid to the employees on December 18, 2015, and covers the pre-petition period from December 7 through and including December 13, 2015.  The estimated payroll is $196,000, which consists of wages, payroll taxes, employee reimbursements, and employee paid insurance premiums. The Debtor's payroll due to be paid to the employees on December 24, 2015, will include wages for December 14 through and including December 20, 2015 (part of which is a prepetition period ).  The estimated payroll for December 24th is expected to be approximately the same and consist of the same items as the December 18th payroll.  The prepetition portion of the December 24th payroll will approximate $112,000.  The employer contributions for the employee benefits programs is expected to be approximately $11,000 for the December 13th

1    payroll and a similar amount for the December 24th payroll.

2        23.    It is necessary for the Debtor to pay these pre-petition wages and

3
4    salaries, related taxes, and the other contractual amounts required to maintain in

5    place its various employee benefits programs.  If they are not paid, these employees

6    will suffer extreme personal hardship through the holiday season and in some cases

7    may be unable to satisfy basic living expenses.  Such a result would destroy

8
9    employee morale and result in immediate and unmanageable employee turnover

10   threatening the Debtor's ability to operate.

11       24.    The compensation the Debtor seeks to pay to employees constitutes

12   priority claims under Bankruptcy Code § 507(a)(4) to the extent of a maximum of

13   $12,475.00 per employee.  All of the wages and salaries sought to be paid under this

14
15   motion were earned by employees within 180 days of the Petition Date and are less

16   than the maximum priority amount per employee.

17       25.    Pursuant to Bankruptcy Code § 105(a), the Debtor seeks to pay pre-

18   petition wages and salaries, related taxes, and those costs associated with various

19   employee benefits programs.

20
21       26.    Section 363(c) permits a debtor to use, sell, or lease property outside

22   the ordinary course of business with approval by the bankruptcy court.  Further,

23   Section 105(a) provides that "The court may issue any order, process, or judgment

24   that is necessary or appropriate to carry out the provisions of this title."

25
26       27.    Bankruptcy Code § 507(a)(4) gives priority up to $12,475.00 per

27   individual for pre-petition claims for wages, salaries, and certain other employee

28   benefits.  Bankruptcy Code § 507(a)(5) gives priority up to a maximum amount for

contributions to each employee benefit plan. The Debtor believes that all of the employee obligations and benefit plan payments for which the Debtor seeks approval are entitled to priority. Because claims up to the statutory limit must be paid in full before payment of general unsecured claims under a plan of reorganization, satisfaction of these employee claims at this time is appropriate. Debtor believes there will be sufficient funds to pay administrative and priority claims.

28. Debtor's employees are essential to Debtor's business. If wages and salaries are not paid, employee morale will deteriorate and will undoubtedly lead to an exodus of employees.

29. Bankruptcy courts have granted similar relief in other Chapter 11 cases. *See, e.g. In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989) (authorizing debtor-in-possession to pay pre-petition employee wages and benefits, and health, life and workers' compensation insurance premiums). Honoring these benefits recognizes that a Debtor's employees are critical to the continued operation of a Debtor's business, and that satisfaction of these benefits will ultimately benefit all creditors. *See LTV Corp. v. Aetna Casualty & Surety Co. (In re Chateaugay Corp)*, 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990).

**NOTICE**

30. No trustee, examiner, or official committee has been appointed in this case.

31. Notice of this Motion has been given to the Office of the United States Trustee, the Debtor's secured creditors, counsel for the Consultant, the Debtor's

landlords, and the Debtor's twenty (20) largest unsecured creditors.  Based on the nature of the relief requested in this Motion, the Debtor submits that no other notice need be given.

WHEREFORE, the Debtor requests that the Court enter the proposed Order, attached hereto as **Exhibit A**:

A.    Authorizing, but not directing, the payment of pre-petition wages and salaries and all related taxes and any withholdings;

B.    Authorizing, but not directing, the payment of costs associated with employee benefits programs; and

C.    Granting such other and further relief as is just and proper under the facts and circumstances.

DATED this 18th day of December 2015.

**DICKINSON WRIGHT PLLC**.

By: /s/ Carolyn J. Johnsen
Carolyn J. Johnsen
M. Kimberly Stagg
*Proposed Attorneys for the Debtor*

**FOREGOING** electronically filed with the Clerk of the U.S. Bankruptcy Court for the District of Arizona this 18th day of December 2015, with a COPY served this same date via e-mail on the following party:

U.S. TRUSTEE'S OFFICE
230 N. First Avenue, Suite 204
Phoenix, AZ  85003
ustpregion14.px.ecf@usdoj.gov
Elizabeth.c.amorosi@usdoj.gov
*Attorneys for the United States Trustee*

Robert A. Boghosian, Esq.
Cohen Tauber Spievack & Wagner P.C.
420 Lexington Avenue, Suite 2400
New York, NY 10170
rboghosian@ctswlaw.com
*Attorneys for Consultant*

And via email, facsimile or overnight
mail on the following parties:

Landlords of Debtor.
Secured Creditors of Debtor.
20 Largest Unsecured Creditors of Debtor.

/s/ Lauri Andrisani
NASHVILLE 53406-11 552940v1

# EXHIBIT A

1

2 **IN THE UNITED STATES BANKRUPTCY COURT**

3 **FOR THE DISTRICT OF ARIZONA**

4

| In re: | Chapter 11 Proceeding |
| | No. 2:15-bk-15898-DPC |
| THE ROOMSTORES OF PHOENIX, L.L.C., d/b/a THE ROOMSTORE, | **ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION WAGES AND SALARIES AND TO HONOR AND CONTINUE PRE-PETITION EMPLOYEE BENEFITS** |
| Debtor. | |

10        This matter comes before the Court pursuant to the *Emergency Motion for*

11 *Order Authorizing Debtor to Pay Pre-Petition Wages and Salaries and to Honor and*

12 *Continue Pre-Petition Employee Benefits* (the "**Motion**") filed by The RoomStores of

13 Phoenix, L.L.C., d/b/a The RoomStore, debtor and debtor-in-possession in the above-

14 captioned case (the "**Debtor**").   The Court having considered the Motion on

15 December ____, 2015, finds and concludes that the Court has jurisdiction to

16 consider the matter; that the relief requested by the Debtor is appropriate and in the

17 best business judgment and interest of the Debtor, its estates, and creditors; that due

18 and proper notice of the Motion has been given; and sufficient cause appears to grant

19 the relief requested in the Motion.  Based on the arguments of counsel at the hearing

20 on the Motion, and on the foregoing, and good cause appearing therefor,

21        IT IS HEREBY ORDERED:

22        A.        The Motion is GRANTED;

23        B.        The Debtor is authorized, but not directed, to pay pre-petition wages

24 and salaries and all related taxes and any withholdings, as set forth in the Motion;

25        C.        The Debtor is authorized, but  not directed, to pay the costs associated

26 with employee benefit programs, as set forth in the Motion; and

27

28

1

        D.      The financial institution holding the accounts against which any wage

2

or benefits checks are written is authorized to honor those checks without further

3

order of the Court.

4

        **SIGNED AND DATED ABOVE.**

5

NASHVILLE 53406-11 552943v1

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28